<u>NOT FOR PUBLICATION</u>

UNITED STATES DISTRICT COURT
DISTRICT OF NEW JERSEY

| | |
|---|---|
| **DAYS INNS WORLDWIDE, INC.,** *Plaintiff*, v. **FINE HOSPITALITY, INC., et al.,** *Defendants.* | Civil Action No. 16-0553 OPINION |

**ARLEO, UNITED STATES DISTRICT JUDGE**

**THIS MATTER** comes before the Court on Plaintiff Days Inns Worldwide, Inc.'s ("DIW") motion for default judgment against Defendant Ravi Parekh ("Parekh") pursuant to Federal Rule of Civil Procedure 55(b)(2). Dkt. No. 17. For the reasons set forth herein, the motion is **DENIED** without prejudice.

**I. BACKGROUND**

Plaintiff DIW is a Delaware corporation with its principal place of business in Parsippany, New Jersey. Compl. ¶ 1. DIW is a franchisor of guest lodging facilities. Id. ¶¶ 9-10. Defendant Fine Hospitality, Inc. ("Fine") is a corporation organized and existing under the laws of Kentucky, where it also has its principal place of business. Id. ¶ 2. Defendant Mahendra Vaidh ("Vaidh") is a shareholder of Fine and a citizen of the State of Indiana. Id. ¶ 3. Defendant Ravi Parekh is a shareholder of Fine and a citizen of the Commonwealth of Kentucky. Id. ¶ 4.

On June 30, 2010, DIW entered into the Franchise Agreement with Fine for the operation of a 90-room Days Inn guest lodging facility located at 102 Gardner Lane, Cave City, Kentucky 42127 (the "Facility"). Id. ¶ 9. Fine was obligated to operate the Facility for a fifteen-year term.

1

Id. ¶ 10.  In addition, Fine agreed to make certain periodic payments to DIW for royalties, system assessments, taxes, interest, reservation system user fees, and other fees (collectively, "Recurring Fees"); to accurately report its monthly gross revenue for the purpose of determining the amount of royalties and other Recurring Fees due to DIW; and to maintain accurate financial information and permit DIW to examine and audit its books and records.  Id. ¶¶ 11, 13-14.  For all past due amounts payable to DIW, Fine agreed to pay interest at the rate of 1.5% per month or the maximum rate permitted by law, whichever is less.  Id. ¶ 12.

Pursuant to Section 5 of the Agreement, both DIW and Fine had the right to terminate the Agreement without cause, as a matter of right, on the fifth or tenth anniversary of the opening date by giving written notice of at least six months.  Id. ¶ 15.  Fine was only entitled to exercise this right if it paid all fees and charges due under the Agreement as of the date Fine provided notice of the termination and as of the effective date of the termination.  Id.  In addition, Section 11.2 of the Franchise Agreement permitted DIW to terminate the Franchise Agreement after notice to Fine for, among other things, a failure to pay any amount due to DIW under the Agreement; failure to remedy any other default of its obligations or warranties under the Agreement within 30 days after receipt of written notice from DIW; receipt of two or more notices of default under the Agreement in any one-year period, whether or not the defaults were cured; ceasing operating the Facility as a Days Inn; and loss of possession or the right of possession of the Facility.  Id. ¶ 16.

Sections 12.1 and 18.3 of the Agreement provided that upon termination pursuant to Section 11.2, Fine would be required to pay liquidated damages to DIW in accordance with a formula specified by the Agreement.  Id. ¶ 17.  Section 18.3 set liquidated damages for the Facility at the lesser of $1,000.00 for each guest room of the Facility that Fine was authorized to operate at the time of termination, or the total number of Recurring Fees generated at the Facility during

the year of operation immediately preceding the date of termination.  Id. ¶ 18.  Pursuant to Section 17.4 of the Agreement, Fine also agreed that in the event of litigation, the non-prevailing party would pay all legal costs and expenses, including reasonable attorneys' fees.  Id. ¶ 19.

Effective as of the date of the Franchise Agreement, Parekh and Vaidh provided DIW with a Guaranty of Fine's obligations under the Franchise Agreement.  Id. ¶ 20.  Pursuant to the Guaranty, Vaidh and Parekh agreed, among other things, that upon a default under the Franchise Agreement, they would "immediately make each payment and perform or cause [Fine] to perform, each unpaid or unperformed obligation of [Fine] under the [Franchise] Agreement."  Id. ¶ 21.  In addition, Vaidh and Parekh agreed to pay the costs, including reasonable attorneys' fees, incurred by DIW in enforcing its rights or remedies under the Guaranty or Franchise Agreement.  Id. ¶ 22.

By letter dated December 22, 2014, Fine notified DIW that it would exercise its right to terminate the Franchise Agreement, pursuant to Section 5, effective on June 30, 2015, the fifth anniversary of operation.  Id. ¶ 23.  By letter dated January 14, 2015, DIW acknowledged Fine's intent to terminate the Agreement, and stated that pursuant to Section 5, Fine's right to terminate will automatically terminate without notice if Fine had not paid all fees and charges due under the Agreement as of the termination date.  Id. ¶ 24.  By letter dated September 28, 2015, DIW stated that it acknowledged Fine's termination effective June 30, 2015, and notified Fine that: (a) as advised in the January 14, 2015 letter, Fine's right to terminate was subject to its obligation to pay all fees and charges due under the Agreement as of the termination date; (b) as of the termination date, Fine owed DIW approximately $51,904.89 in Recurring Fees; and (c) Fine was to pay all outstanding Recurring Fees through the date of termination within 14 days, otherwise its right to terminate would expire, and Fine would be required to pay liquidated damages in the amount of $51,484.61 pursuant to Sections 5 and 18.3 of the Agreement in addition to the outstanding

Recurring Fees. Id. ¶ 25. Fine did not pay all outstanding Recurring Fees through the date of termination within 14 days of the September 28, 2015 letter. Id. ¶ 26.

On February 2, 2015, DIW filed the instant Complaint. Dkt. No. 1. The Complaint contains six counts against Defendants: (1) an accounting claim for Fine's failure to permit DIW to examine its financial records; (2) a claim for $51,484.61 in liquidated damages for Fine's failure to remit Recurring Fees to DIW; (3) a claim, in the alternative, for actual damages due to Fine's premature termination of the Agreement; (4) a claim for $60,494.03 in outstanding Recurring Fees that Fine has not paid to DIW; (5) an unjust enrichment claim for failure to remit Recurring Fees to DIW; and (6) a claim against Vaidh and Parekh under the Guaranty for Fine's failure to remit Recurring Fees to DIW. Id. ¶¶ 28-54. DIW now seeks Recurring Fees in the amount of $64,794.17, inclusive of interest at the rate of 1.5% per month. Fenimore Aff. ¶ 22. DIW also seeks liquidated damages in the amount of $51,484.61. Id. ¶ 28. And lastly, DIW seeks prejudgment interest at the rate of 1.5% per month on the liquidated damages, for an additional $8,988.08. Id. ¶ 29. The total amount DIW requests is $125,266.84 as of July 18, 2016. Id. ¶ 30.

On February 23, 2016, service of the Complaint was made on Defendant Parekh. Dkt. No. 5. On April 20, 2016, DIW requested the entry of default against Parekh, and the Clerk entered default on the same day. Dkt. No. 9. On May 13, 2016, DIW requested the entry of default against Fine and Vaidh, which the Clerk entered on the same day. Dkt. No. 11. In May and June, the Court granted DIW extensions of time to file for default judgment. Dkt. Nos. 13, 15. On June 10, 2016, DIW filed the instant motion for default judgment against Parekh.[1] Dkt. No. 17. The motion is unopposed.

---

[1] DIW voluntarily dismissed Defendants Fine Hospitality, Inc. and Mahendra Vaidh. Dkt Nos. 16, 18. Therefore, DIW only moves for default judgment against Defendant Parekh.

## II. Legal Standard

"The district court has the discretion to enter default judgment, although entry of default judgments is disfavored as decisions on the merits are preferred." Animal Sci. Prods., Inc. v. China Nat'l Metals & Minerals Imp. & Exp. Corp., 596 F. Supp. 2d 842, 847 (D.N.J. 2008). Before entering default judgment the court must: (1) determine it has jurisdiction both over the subject matter and parties; (2) determine whether defendants have been properly served; (3) analyze the Complaint to determine whether it sufficiently pleads a cause of action; and (4) determine whether the plaintiff has proved damages. See Chanel, Inc. v. Gordashevsky, 558 F. Supp. 2d 532, 535-36 (D.N.J. 2008); Wilmington Savings Fund Soc., FSB v. Left Field Props., LLC, No. 10-4061, 2011 WL 2470672, at *1 (D.N.J. June 20, 2011). Although the facts pled in the Complaint are accepted as true for the purpose of determining liability, the plaintiff must prove damages. See Comdyne I, Inc. v. Corbin, 908 F.2d 1142, 1149 (3d Cir. 1990).

In addition, prior to granting default judgment, the Court must make explicit factual findings as to: (1) whether the party subject to the default has a meritorious defense; (2) the prejudice suffered by the party seeking default judgment; and (3) the culpability of the party subject to default. Doug Brady, Inc. v. N.J. Bldg. Laborers Statewide Funds, 250 F.R.D. 171, 177 (D.N.J. 2008).

## III. Analysis

### A. Jurisdiction & Service

The Court has both subject matter jurisdiction over this dispute and personal jurisdiction over Parekh. This Court has subject matter jurisdiction by virtue of diversity jurisdiction under 28 U.S.C. § 1332 because DIW and Parekh are citizens of different states and there is an amount in controversy exceeding $75,000. See Compl. ¶¶ 1-5. This Court has personal jurisdiction over Parekh pursuant to the terms of the Guaranty, which provides that he is personally bound by

Section 17.4 of the Franchise Agreement.  Id. ¶ 7.  Section 17.4 of the Franchise Agreement provides that Fine consents to and waives objection to "the non-exclusive personal jurisdiction of and venue in . . . the United States District Court for the District of New Jersey for all cases and controversies under this Agreement or between [DIW] and [Fine]."  Id. ¶ 6.  DIW also provided the Court with proof of personal service on Parekh.  See Executed Summonses, Dkt. No. 5; Couch Cert. ¶ 5.

### B. Liability

As Parekh has not filed an Answer or otherwise responded to the Complaint, the Court must accept the truthfulness of DIW's well pled allegations as to liability.  Comdyne I, 908 F.2d at 1149.  The Court is satisfied that DIW has adequately pled claims against Parekh for breach of contract.

To state a claim for breach of contract in New Jersey, a plaintiff must allege: (1) the existence of a valid contract between the parties; (2) that Defendant breached the contract; and (3) that Plaintiff suffered damages due to the breach.  AT & T Credit Corp. v. Zurich Data Corp., 37 F. Supp. 2d 367, 370 (D.N.J. 1999).  DIW has alleged that: (1) there was a contractual relationship between DIW and Fine based on the Franchise Agreement, see Compl. ¶ 9; (2) Fine breached the Agreement by failing to make required payments of Recurring Fees, see id. ¶¶ 17-21; (3) Parekh breached the Guaranty when he failed to fulfill Fine's obligations under the Franchise Agreement, see id. ¶¶ 52-54; Fenimore Aff. Ex. B; and (4) DIW suffered damages, see Compl. ¶¶ 44, 53; Fenimore Aff. ¶¶ 14-17.  Therefore, DIW has sufficiently alleged a breach of contract by Parekh.

### C. Appropriateness of Default Judgment

Next, the Court must consider: (1) whether the party subject to the default has a meritorious defense; (2) the prejudice suffered by the party seeking default judgment; and (3) the culpability of the party subject to default.  Doug Brady, 250 F.R.D. at 177.  The Court concludes that in the

absence of any responsive pleading and based upon the facts alleged in the Complaint, Parekh does not have a meritorious defense. See Ramada, 2012 WL 924385, at *5. Second, the Court finds that DIW will suffer prejudice absent entry of default judgment as it would have no other means of obtaining relief. Finally, the Court finds that Parekh acted culpably as he has been served with the Complaint, is not an infant or otherwise incompetent, and is not presently engaged in military service. See Couch Cert. ¶¶ 5-10; Nationwide Mut. Ins. Co. v. Starlight Ballroom Dance Club, Inc., 175 F. App'x 519, 523 (3d Cir. 2006) (holding that a defendant's failure to respond to communications from the plaintiff and the court can constitute culpability).

### D. Monetary Damages

DIW has requested a default judgment in the amount of $125,266.84. Fenimore Aff. ¶ 30. This amount is calculated as of July 18, 2016, and consists of: (1) Recurring Fees in the amount of $64,794.17, inclusive of interest in the amount of 1.5% per month, see id. ¶¶ 19-22; and (2) liquidated damages in the amount of $51,484.61, plus interest calculated at the rate of 1.5% per month, in the amount of $8,988.06, see id. ¶¶ 28-29. In support of its claim for damages, DIW submitted an itemized statement setting forth the amounts of Recurring Fees due and owing, see Fenimore Aff. Ex. F, as well as an itemized breakdown of the total amounts sought, see Fenimore Aff. Ex. G.

DIW has not established that it is entitled to the amount of liquidated damages and Recurring Fees it requests. While DIW has shown an entitlement to Recurring Fees unpaid as of the date of termination, as well as liquidated damages pursuant to the formula set forth in the Franchise Agreement, it has not adequately set forth the precise date of termination of the Agreement. Due to that failure, the Court is unable to calculate the amount of Recurring Fees and liquidated damages owed due to Parekh's breach.

Fine initially attempted to terminate the Franchise Agreement under Section 5, which provided that either party could terminate the contract, as of right and without cause, on the five- or ten-year anniversary of the Agreement's opening date. Id. ¶ 17. On December 22, 2014, Fine sent a letter to DIW expressing an intent to terminate the Agreement on its fifth anniversary, June 30, 2015. See Fenimore Aff. Ex. C. A valid termination under Section 5 would have precluded DIW from seeking liquidated damages. See Fenimore Aff. Ex. A § 5 ("You will pay no Liquidated Damages if you comply with the terms of this Section . . . ."). Yet for Fine's termination to be valid under Section 5, all outstanding Recurring Fees must have been paid as of the date of termination. See Compl. ¶¶ 19-21. Because Fine had still not paid $51,904.89 in Recurring Fees as of the intended date of termination, it did not properly terminate the Agreement under Section 5. Fenimore Aff. ¶ 19.

Instead, it appears that the Franchise Agreement was actually terminated by DIW pursuant to Section 11.2, due to Fine's failure to remit payment for outstanding Recurring Fees. See id. ¶ 27; Compl. ¶¶ 16-17, 34. The Court agrees that this type of termination would entitle DIW to liquidated damages pursuant to Sections 5 and 18.3 of the Agreement. See Fenimore Aff. ¶ 11. Under the Agreement, liquidated damages are calculated as the lesser of $1,000 for each guest room of the Facility, or the total amount of Recurring Fees generated at the Facility during the one-year period immediately before the date of termination. Id. ¶ 27. Here, DIW calculates its request for liquidated damages based on the Recurring Fees generated in the year preceding June 30, 2015. Id. ¶ 29.

However, it is not clear that June 30, 2015 is the actual date of termination. While June 30th was the date that Fine intended to terminate the Agreement, the Agreement was ultimately terminated by DIW, not Fine. Based on the parties' communications, termination may have

instead occurred on September 28, 2015, the date DIW sent Fine a letter confirming that the Agreement had been terminated. See Fenimore Aff. Ex. E; see also Days Inns Worldwide, Inc. v. Savita Hosp. Grp., Inc., No. 13-2863, 2014 WL 3748204, at *3 (D.N.J. July 28, 2014) (holding that a similar franchise agreement was actually terminated under Section 11.2 when DIW sent a letter to defendant, declaring it to be in breach). If the date of termination was indeed on September 28, 2015 rather than on June 30, 2015, DIW's liquidated damages figure will require recalculation.

DIW has also failed to establish that it is entitled to a judgment in the amount it seeks for unpaid Recurring Fees. While DIW has met its burden to demonstrate that it is entitled to the payment of any Recurring Fees that were owed as of the date of termination, it appears that DIW also seeks Recurring Fees that accrued *after* the alleged termination of the contract. See Fenimore Aff. Ex. F (seeking fees through April 2016). If this Court were to grant DIW Recurring Fees that were incurred following the Agreement's termination, an award of liquidated damages (which is intended to compensate DIW for damages it would sustain after a premature breach) would arguably provide a double recovery, and thus could be construed as an unenforceable penalty. Therefore, to the extent the requested amount reflects post-termination Recurring Fees, the Court denies DIW's request. See, e.g., Ramada Worldwide Inc. v. Khan Hotels LLC, No. 16-2477, 2017 WL 187384, at *7 (D.N.J. Jan. 17, 2017) (denying a request for Recurring Fees that were incurred after the alleged improper termination, where liquidated damages were also sought); Days Inns Worldwide, Inc. v. Savita Hosp. Grp., Inc., No. 13-2863, 2014 WL 3748204, at *4 (D.N.J. July 28, 2014) (same).

To provide DIW with the opportunity to explain its requests for liquidated damages and Recurring Fees and/or to recalculate its requests for both, the Court will deny the motion for default judgment without prejudice and permit DIW to file a revised motion.

**IV.** **CONCLUSION**

For the reasons set forth herein, DIW's motion for default judgment, Dkt. No. 17, is **DENIED** without prejudice.  An appropriate Order accompanies this Opinion.  DIW shall file a revised motion for default judgment within thirty days of that Order.

**Dated: January 30, 2017**

*/s Madeline Cox Arleo*
**Hon. Madeline Cox Arleo**
**United States District Judge**