UNITED STATES DISTRICT COURT
DISTRICT OF NEW JERSEY

| | |
|---|---|
| DAYS INNS WORLDWIDE, INC., <br><br> *Plaintiff*, <br><br> v. <br><br> FINE HOSPITALITY, INC., et al., <br><br> *Defendants.* | Civil Action No. 16-0553 <br><br> OPINION |

**ARLEO, UNITED STATES DISTRICT JUDGE**

**THIS MATTER** comes before the Court on Plaintiff Days Inns Worldwide, Inc.'s ("DIW") revised motion for default judgment against Defendant Ravi Parekh ("Parekh") pursuant to Federal Rule of Civil Procedure 55(b)(2). ECF No. 17. For the reasons set forth herein, the motion is **DENIED** without prejudice.

I. **BACKGROUND**

Plaintiff DIW is a Delaware corporation with its principal place of business in Parsippany, New Jersey. Compl. ¶ 1, ECF No. 1. DIW is a franchisor of guest lodging facilities. Id. ¶¶ 9-10. Plaintiff initially brought this action against Fine Hospitality, Inc. ("Fine"), Mahendra Vaidh ("Vaidh"), and Ravi Parekh ("Parekh"). Fine is a corporation organized and existing under the laws of Kentucky, where it also has its principal place of business. Id. ¶ 2. Vaidh is a shareholder of Fine and a citizen of the State of Indiana. Id. ¶ 3. Parekh is a shareholder of Fine and a citizen of the Commonwealth of Kentucky. Id. ¶ 4. On September 2, 2016, DIW initiated a Complaint in this action against Fine, Vaidh, and Parekh. ECF No. 1. On January 18, 2017, the Court dismissed the Complaint as to Defendants Fine and Vaidh at Plaintiff's request. ECF No. 18.

1

On June 30, 2010, DIW entered into the Franchise Agreement with Fine for the operation of a 90-room Days Inn guest lodging facility located at 102 Gardner Lane, Cave City, Kentucky 42127 (the "Facility"). Id. ¶ 9. Fine was obligated to operate the Facility for a fifteen-year term. Id. ¶ 10. In addition, Fine agreed to make certain periodic payments to DIW for royalties, system assessments, taxes, interest, reservation system user fees, and other fees (collectively, "Recurring Fees"); to accurately report its monthly gross revenue for the purpose of determining the amount of royalties and other Recurring Fees due to DIW; and to maintain accurate financial information and permit DIW to examine and audit its books and records. Id. ¶¶ 11, 13-14. For all past due amounts payable to DIW, Fine agreed to pay interest at the rate of 1.5% per month or the maximum rate permitted by law, whichever is less. Id. ¶ 12.

Pursuant to Section 5 of the Agreement, both DIW and Fine had the right to terminate the Agreement without cause, as a matter of right, on the fifth or tenth anniversary of the opening date by giving written notice of at least six months. Id. ¶ 15. Fine was only entitled to exercise this right if it paid all fees and charges due under the Agreement as of the date Fine provided notice of the termination and as of the effective date of the termination. Id. In addition, Section 11.2 of the Franchise Agreement permitted DIW to terminate the Franchise Agreement after notice to Fine for, among other things, a failure to pay any amount due to DIW under the Agreement; failure to remedy any other default of its obligations or warranties under the Agreement within 30 days after receipt of written notice from DIW; receipt of two or more notices of default under the Agreement in any one-year period, whether or not the defaults were cured; ceasing operating the Facility as a Days Inn; and loss of possession or the right of possession of the Facility. Id. ¶ 16.

Sections 12.1 and 18.3 of the Agreement provided that upon termination pursuant to Section 11.2, Fine would be required to pay liquidated damages to DIW in accordance with a

2

formula specified by the Agreement. Id. ¶ 17. Section 18.3 set liquidated damages for the Facility at the lesser of $1,000.00 for each guest room of the Facility that Fine was authorized to operate at the time of termination, or the total amount of Recurring Fees generated at the Facility during the year of operation immediately preceding the date of termination. Id. ¶ 18. Pursuant to Section 17.4 of the Agreement, Fine also agreed that in the event of litigation, the non-prevailing party would pay all legal costs and expenses, including reasonable attorneys' fees. Id. ¶ 19.

Effective as of the date of the Franchise Agreement, Parekh and Vaidh provided DIW with a Guaranty of Fine's obligations under the Franchise Agreement. Id. ¶ 20. Pursuant to the Guaranty, Vaidh and Parekh agreed, among other things, that upon a default under the Franchise Agreement, they would "immediately make each payment and perform or cause [Fine] to perform, each unpaid or unperformed obligation of [Fine] under the [Franchise] Agreement." Id. ¶ 21. In addition, Vaidh and Parekh agreed to pay the costs, including reasonable attorneys' fees, incurred by DIW in enforcing its rights or remedies under the Guaranty or Franchise Agreement. Id. ¶ 22.

By letter dated December 22, 2014, Fine notified DIW that it would exercise its right to terminate the Franchise Agreement, pursuant to Section 5, effective on June 30, 2015, the fifth anniversary of operation. Id. ¶ 23. By letter dated January 14, 2015, DIW acknowledged Fine's intent to terminate the Agreement, and stated that pursuant to Section 5, Fine's right to terminate will automatically cease without notice if Fine had not paid all fees and charges due under the Agreement as of the termination date. Id. ¶ 24. By letter dated September 28, 2015, DIW stated that it acknowledged Fine's termination effective June 30, 2015, and notified Fine that: (a) as advised in the January 14, 2015 letter, Fine's right to terminate was subject to its obligation to pay all fees and charges due under the Agreement as of the termination date; (b) as of the termination date, Fine owed DIW approximately $51,904.89 in Recurring Fees; and (c) Fine was to pay all

outstanding Recurring Fees through the date of termination within 14 days, otherwise its right to terminate would expire, and Fine would be required to pay liquidated damages in the amount of $51,484.61 pursuant to Sections 5 and 18.3 of the Agreement in addition to the outstanding Recurring Fees. Id. ¶ 25. Fine did not pay all outstanding Recurring Fees through the date of termination within 14 days of the September 28, 2015 letter. Id. ¶ 26.

## II. PROCEDURAL POSTURE

On April 20, 2016, DIW requested the entry of default against Parekh, and the Clerk entered default on the same day. ECF No. 9. On June 10, 2016, DIW moved for default judgment against Parekh and requested liquidated damages in the amount of $51,484.61, Recurring Fees in the amount of $64,794.17, inclusive of interest at the rate of 1.5% per month, and prejudgment interest at the rate of 1.5% per month on the liquidated damages, for an additional $8,988.08, for a total of $125,266.84. ECF No. 17; see also ECF No. 2-1 ("Fenimore Aff. 1"), Ex. E-F.

On January 30, 2017, the Court issued an Opinion and Order denying DIW's motion for default judgment. ECF No. 19. The Court found that DIW properly served Parekh, sufficiently alleged a breach of contract by Parekh, and pled facts to support a finding that default judgment would be appropriate in this case. Id. However, the Court denied DIW's motion on that ground that DIW failed to establish that it was entitled to the damages it requested. Id. Specifically, the Court found that DIW failed to "adequately set forth the precise date of termination of the Agreement." Id.

DIW's initial calculations assume that the Agreement was terminated on June 30, 2015, when Fine attempted to terminate under Section 5. However, the Court found that the Franchise Agreement appears to have been terminated by DIW under Section 11.2 through its letter to Fine on September 28, 2015. Id. While the Court found that DIW demonstrated it was entitled to "Recurring Fees unpaid of as the date of termination, as well as liquidated damages pursuant to

4

the formula set forth in the Franchise Agreement," the Court did not accept DIW's contention that the Agreement was terminated on June 30, 2015. Id. The Court denied DIW's motion for default judgment so as to "provide DIW with the opportunity to explain its requests for liquidated damages and Recurring Fees and/or to recalculate its requests for both." Id.

On March 3, 2017, DIW filed its renewed motion for default judgment against Parekh. ECF No. 21. DIW now seeks $67,048.68 in liquidated damages and $35,757.77 in Recurring Fees, for a total of $102,806,42 Id. In support of its motion, DIW attached a revised Affidavit from Suzanne Fenimore, Senior Director of Contracts Compliance at DIW, containing an explanation of the figures DIW seeks and documents to support DIW's calculations. ECF 21-3 ("Fenimore Aff. 2"). The Affidavit contends that DIW is entitled to $51,484.51 in liquidated damages pursuant to Section 18.3 of the Agreement because Fine generated that amount in Recurring Fees during the full year immediately preceding the termination and attaches, in support, a list of Recurring Fees generated from October 2014 to June 2015. See Fenimore Aff. 2; id., Ex. E. That DIW has attached a list of fees generated in the year preceding June 30, 2015 suggests that DIW still believes this is the date of termination. Further, the Affidavit contends that DIW is entitled to interest as of July 30, 2015, which it alleges is "30 days from the date of termination." Fenimore Aff. 2.

DIW also attaches an itemized statement in support of its request for $35,757.77 in Recurring Fees, inclusive of interest. Fenimore Aff. 2, Ex. F. DIW attached a similar statement in its initial Motion in which it sought $64,794.17 in Recurring Fees, inclusive of interest. Fenimore Aff. 1, Ex. F. The Court rejected DIW's initial request for Recurring Fees noting that that initial statement sought fees through April 2016, which is after the alleged termination date. ECF No. 19. DIW's revised itemized statement contains the same flaw as DIW now seeks fees through January 2016. See Fenimore Aff. 2, Ex. F

As DIW's revised Motion still does not adequately set forth the precise date of termination of the Agreement, the Court is unable to calculate the amount of Recurring Fees and liquidated damages owed due to Parekh's breach.

## III. CONCLUSION

For the reasons set forth herein, DIW's motion for default judgment, ECF No. 21, is **DENIED** without prejudice. An appropriate Order accompanies this Opinion. DIW shall file a revised motion for default judgment within thirty days of that Order and such motion shall be submitted consistent with the directives in this Opinion.

**Dated: September 25, 2017**

*/s Madeline Cox Arleo*
**Hon. Madeline Cox Arleo**
**United States District Judge**